UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


PENNY S. WEBB,

          Plaintiff,

v.                                    Civil Action No. 15-11209

NANCY A. BERRYHILL,
Acting Commissioner of the
Social Security Administration,

          Defendant.


<u>MEMORANDUM OPINION AND ORDER</u>


          Pending is the objection filed on September 12, 2016, by defendant Commissioner to the magistrate judge's proposed findings and recommendation ("PF&R").[1]


I.  <u>Procedural history</u>


          On July 15, 2015, Penny S. Webb ("plaintiff") instituted this civil action pursuant to 42 U.S.C. § 405(g). Plaintiff seeks judicial review of the Commissioner's administrative decision denying plaintiff's application for disability insurance benefits and supplemental security income.

---

[1] While Carolyn W. Colvin was the Acting Commissioner of Social Security as of the date of the objections to the PF&R, Nancy Berryhill became the Acting Commissioner on January 23, 2017.

This action was referred to United States Magistrate Judge Dwane L. Tinsley for consideration, pursuant to 28 U.S.C. § 636(b)(1)(B) and standing order in this district. The magistrate judge filed his PF&R on August 25, 2016. In that document, the magistrate judge recommends that plaintiff's motion for judgment on the pleadings be granted to the extent plaintiff seeks remand, that the motion for judgment on the pleadings filed by the Commissioner be denied, that the Commissioner's final decision be reversed and remanded, and that this action be dismissed from the docket. See PF&R at 20. On September 12, 2016, as noted, the Commissioner timely filed her objections to the PF&R. On September 15, 2016, plaintiff filed her response to the Commissioner's objections.

The Commissioner objects to the magistrate judge's determination that the ALJ failed to adequately discuss the evidence so that the reviewing court could provide meaningful review of plaintiff's residual functional capacity ("RFC"). See the Commissioner's Objections to PF&R ("Obj.") at 1-4.

## II.  Standard of review

The court reviews de novo those portions of the magistrate judge's PF&R to which objections are timely filed. 28 U.S.C. § 636(b)(1)(B); see Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982); see also 20 C.F.R. § 416.927(e)(1) (ultimate

decision regarding disability determinations rests with the
Commissioner). On the other hand, the standard of review of the
Commissioner's decision is rather deferential to the
Commissioner, for, "[u]nder the Social Security Act, [a
reviewing court] must uphold the factual findings of the [ALJ]
if they are supported by substantial evidence and were reached
through application of the correct legal standard." Johnson v.
Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (internal citations
and quotations omitted); Oppenheim v. Finch, 495 F.2d 396, 397
(4th Cir. 1974) (court must scrutinize the record as a whole to
determine whether the conclusions reached are supported by
substantial evidence); see also 42 U.S.C. § 405(g). Substantial
evidence is that which "a reasonable mind might accept as
adequate to support a conclusion." Richardson v. Perales, 402
U.S. 389, 401 (1971) (internal citations and quotations
omitted).

        "In reviewing for substantial evidence, [a district
court does] not undertake to reweigh conflicting evidence, make
credibility determinations, or substitute [its] judgment for
that of the ALJ." Johnson, 434 F.3d at 653 (internal citations
and quotations omitted). Substantial evidence is by definition
more than "a mere scintilla," Smith v. Chater, 99 F.3d 635, 638
(4th Cir. 1996), but "may be somewhat less than a

preponderance," <u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (<u>quoting</u> <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1996)).

### III.  <u>Discussion</u>

The Social Security regulations establish a "sequential evaluation" for the adjudication of disability claims.  <u>See</u> 20 C.F.R. §§ 404.1520(a), 416.920(a).  The first question is whether the claimant is currently engaged in gainful employment.  <u>Id.</u> at §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If not, the second question is whether the claimant suffers from a severe impairment.  <u>Id.</u> at §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If so, the third question is whether the claimant's impairment meets or equals any of the specific impairments listed in Appendix 1 to Subpart P of the regulations.  <u>Id.</u> at §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments meet or equal a listing, he or she is considered disabled, and is awarded benefits.  <u>Id.</u>  If not, the inquiry continues on to whether the claimant's impairments prevent the performance of past relevant work.  <u>Id.</u> at §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant satisfies this inquiry, the claimant establishes a prima facie case of disability, shifting the burden to the Commissioner for the fifth and final inquiry.  <u>Hall v. Harris</u>, 658 F.2d 260, 264

4

(4th Cir. 1981); McLain c. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983).  The final inquiry is whether the claimant is able to perform other forms of substantial gainful activity considering the claimant's impairments, age, education and prior work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

Here, the ALJ found at step one that plaintiff was not engaged in substantial employment.  Tr. at 14.  At step two, the ALJ found that plaintiff suffered from the following severe impairments: degenerative joint disease of the thoracic spine; post-operative residuals of a right shoulder injury; residuals of a neck injury; depression; anxiety/panic attacks; and borderline intellectual function.  Id. at 14-15.  In addition, the ALJ found that plaintiff suffered from a number of non-severe impairments not presently relevant.  Id. at 15.  At step three, the ALJ found that plaintiff's impairments did not meet or equal any listed impairment.  Id. at 16-19.  At step four, the ALJ found that plaintiff had the RFC to perform light work with the following limitations:

> [She could] occasionally lift and carry up to 20 pounds. She could frequently lift and carry up to 10 pounds.  She could stand and walk at least 6 hours as well as sit up to 6 hours in an 8 hour day.  She could occasionally climb ramps and stairs.  She could never climb ladders, ropes, or scaffolds.  She could occasionally balance, stoop, kneel, crouch, and crawl.  She could perform no overhead reaching

with the right (dominant) extremity.  She could have only
occasional exposure to extreme cold, wetness, humidity,
vibrations, or hazards.  She could understand, remember,
and carry out simple tasks.  She could respond
appropriately to brief encounters with coworkers and
supervisors but should have no interaction with the general
public.  She would do best in an environment requiring
minimal interaction and few, if any, changes in the work
routine.

Id. at 19.  The ALJ determined that plaintiff retained the

aforementioned RFC at least in part because she found that

plaintiff's "medically determinable impairments could reasonably

be expected to cause the alleged symptoms; however [her]

statements concerning the intensity, persistence and limiting

effects of these symptoms are not entirely credible . . .

[because] objective evidence does not show [the impairments] to

be as limiting as [plaintiff] alleged." Id. at 20-22.

        The ALJ also considered and gave "little weight" to

the opinion evidence provided by Dr. Nilima Bhirud, M.D., who

completed a consultative examination of plaintiff at the request

of the ALJ.  Id. at 25, 1464-1475.  The ALJ found that "several

limitations" discussed by Dr. Bhirud were "unsupported by the

record." Id. at 25.  The ALJ instead afforded "substantial

weight" to the state agency medical experts, Dr. Rabah

Boukhemis, M.D., and Dr. Pedro F. Lo, M.D.  Id.  On October 26,

2011, Dr. Boukhemis determined that plaintiff's reach was

limited and that she could perform only occasional overhead

6

reaching.  Id. at 25, 1322.  Dr. Lo concurred with the opinions
of Dr. Boukhemis in December 2011.  Id. at 1346-1349.

      Finally, based on her assessment of plaintiff's RFC
and the testimony of Olan J. Dodd, the vocational expert, the
ALJ found, at steps four and five, that plaintiff was not
capable of performing any past relevant work, but was capable of
performing the requirements of representative occupations, such
as a bagger, marker, and electrode cleaner.  Id. at 27.  The ALJ
concluded that plaintiff "was capable of making a successful
adjustment to other work that existed in significant numbers in
the national economy."  Id.  As a result, she determined that
plaintiff was not disabled.  Id.

      The magistrate judge found that the ALJ erred in
determining the RFC of plaintiff.  Specifically, he found that
the ALJ did not properly evaluate the conflicting evidence of
Dr. Bhirud in making her RFC determination that plaintiff could
not perform any overhead reaching with her right extremity, but
did not limit her ability to reach in all other directions.
PF&R at 18.  The magistrate judge therefore concluded that the
ALJ's explanation "lacks the analysis needed for this Court to
provide meaningful review pursuant to the Fourth Circuit holding
in Mascio."  Id. at 19.  In addition, the magistrate judge
concluded that "the inability to determine if the ALJ considered

7

conflicting evidence regarding Claimant's ability to reach in all directions with her right upper extremity, affects whether the vocational expert's testimony is based on substantial evidence." Id. Therefore, the magistrate judge recommends that the final decision of the Commissioner be reversed and that this case be remanded for further proceedings. Id. at 20.

The Commissioner objects to the magistrate judge's determination that the ALJ failed to adequately discuss the evidence in order to permit meaningful review under Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). Obj. at 1-2. According to the Commissioner, plaintiff herself did not argue to the ALJ that she was unable to reach with her right arm in all directions, but only that she was unable to lift her arm above shoulder level. Id. at 2. The Commissioner argues that because she did not state that she had this limitation during the hearing, the ALJ was not required to discuss it further. Id. As discussed more fully below, this contention is not fully supported by the record of the hearing and is contrary to the requirement that the ALJ must consider all evidence contained in the record. See 20 C.F.R. § 404.1545(a)(1). The Commissioner also argues that the ALJ sufficiently discussed the evidence with regards to plaintiff's shoulder impairment "to explain why

she afforded Dr. Bhirud's opinion little weight, and substantial evidence supports this finding."  Obj. at 4.

Between the third and fourth steps of the disability determination process, the ALJ must determine a claimant's residual functional capacity, or RFC.  "Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continued basis."  SSR 96-8p, 1996 WL 374184 at *1 (S.S.A. July 2, 1996).  The RFC determines the most "an individual can do despite his or her limitations or restrictions.  Id.  To determine a claimant's RFC, the ALJ "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis."  Id. at *1.  The RFC is then used to determine: (1) whether a claimant can perform past relevant work as it was actually performed; (2) the appropriate exertional level (sedentary, light, medium, heavy, or very heavy) for the claimant; and (3) whether the claimant can perform all of the work required for that exertional level.  Id. at *7

In Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), our court of appeals addressed the ALJ's duties when making an RFC assessment, as stated in Social Security Ruling 96-8p.  In order

to properly determine a claimant's RFC, the ALJ must "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184 at *7. The ALJ must also "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id. In making the RFC assessment, the ALJ "must always consider and address medical source opinions." Id. If an RFC assessment conflicts with a medical source opinion, the ALJ must explain why the opinion was not adopted. Id.

After describing the requirements of SSR 96-8p, the court in Mascio explained that, "a per se rule requiring remand when the ALJ does not perform a function-by-function analysis . . . is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" Mascio, 780 F.3d at 636 (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013). Instead, the court adopted the approach of the Second Circuit, holding that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other

inadequacies in the ALJ's analysis frustrate meaningful review.'" Id. (quoting Chichocki, 729 F.3d at 177).

In Mascio, the court concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on Mascio's ability to perform relevant functions. Id. at 637. In particular, the court observed that "the ALJ concluded that Mascio [could] perform certain functions [but] said nothing about Mascio's ability to perform them for a full workday," despite conflicting evidence in the record on that point, and also concluded that Mascio could lift only 20 pounds without explaining his rationale for rejecting a conflicting finding that Mascio could lift 50 pounds. Id. at 636-37.

Here, the ALJ determined that plaintiff had the RFC to perform light work with specific limitations that included the inability to reach overhead with her right extremity. Id. at 19, 27. The RFC did not specifically mention or limit plaintiff's ability to reach in all other directions, despite evidence in the record that supported such a limitation.

In particular, on June 19, 2013, plaintiff saw Dr. Nilima Bhirud, M.D., at the request of the ALJ for a consultative exam. Tr. 1464-1475. Based on range of motion testing she conducted, Dr. Bhirud determined that plaintiff had

limitations in her ability to reach in all directions with her right extremity.  Id. at 1472.  Regarding plaintiff's right shoulder, Dr. Bhirud wrote that she "has severe tenderness and there is decreased range of motion."  Id. at 1466. Specifically, Dr. Bhirud found that plaintiff had the following range of motion in her right shoulder:

       A. Flexion (0° - 180°)         Right 50°

       B. Abduction (0° - 180°)      Right 45°

       C. Adduction (0° - 50°)       Right 30°

       D. Internal Rotation (0° - 180°)  Right 25°

       E. External Rotation (0° - 180°)  Right 60°

Id. at 1468.  The restrictions Dr. Bhirud observed in plaintiff's movement show that she was unable to raise her right arm to shoulder height and additionally faced limitations in her ability to rotate her right arm.[2]  Dr. Bhirud assessed that

---

[2] The diagrams filled out by Dr. Bhirud regarding plaintiff's right shoulder limitations are duplicated below.  Tr. at 1468.



SHOULDER

A. Flexion (0° - 180°)
Right ___ Left ___
180°
FLEXION
90°
0°

B. Abduction (0° - 180°)
Right ___ Left ___
45
180°
ABDUCTION
90°
ADDUCTION
50°
0°

C. Adduction (0° - 50°)
Right ___ Left ___

D. Internal Rotation (0° - 40°)
Right ___ Left ___

E. External Rotation (0° - 90°)
Right ___ Left ___

plaintiff put in good effort during the range of motion test.
Id. at 1469.  Dr. Bhirud also completed a "Medical Source
Statement of Ability to Do Work-Related Activities" form.  Id.
at 1470.  On that form, Dr. Bhirud stated that plaintiff should
never reach overhead, never reach in all other directions, and
never push/pull with her right hand.  Id. at 1472.  Dr. Bhirud
also stated that plaintiff should never: climb stairs and ramps;
climb ladders or scaffolds; balance; stoop; kneel; crouch; or
crawl.  Id. at 1473.  Based on her examination, Dr. Bhirud
concluded that plaintiff had "severe pain" in her right shoulder
as well as "decreased range of motion in the right shoulder . .
. [and] of the neck."  Id. at 1467.

     In making plaintiff's RFC determination with regards
to limitations due to plaintiff's right shoulder impairment, the
ALJ determined that "the objective evidence does not show this
impairment to be as limiting as the claimant alleged."  Id. at
21.  In assessing the 2013 medical opinions of Dr. Bhirud, the
ALJ first compared her findings to that of Dr. Prasadarao B.
Mukkamala, M.D., who examined plaintiff in December 2010 and
found that plaintiff had only "modest abnormal findings."  Id.
at 23.  The ALJ did not discuss Dr. Mukkamala's findings that
plaintiff had range of motion difficulties in her right
extremity, specifically that range of motion testing revealed

that at "the right shoulder, flexion was 130 degrees, extension

50 degrees, abduction 130 degrees, adduction 40 degrees,

external rotation 50 degrees and internal rotation 70 degrees."

Tr. at 778.  According to the ALJ, Dr. Mukkamala's "modest

abnormal findings" were "consistent with" Dr. Bhirud's findings,

who noted in June 2013 that the claimant had some right

should[er] motion restriction with pain, but she found that

plaintiff exhibited normal gait and grip."  Id.  The ALJ further

failed to mention the results of Dr. Bhirud's range of motion

test where plaintiff had extensive restrictions in her ability

to raise and rotate her right arm.  Id.; see id. at 1468.  The

ALJ then concluded that "the evidence of continued improvements

leading to largely normal objective findings is wholly

inconsistent with the claimant's allegations of debilitating

right shoulder symptoms."  Id.

        The ALJ next determined that Dr. Bhirud's opinion

evidence should be given little weight, finding that

> Dr. Bhirud concluded the claimant was capable of light
> exertion but identified several limitations unsupported by
> the record.  For example, Dr. Bhirud opined the claimant
> could never perform any postural motions, including never
> stooping.  These limitations are not supported by the
> overall record and are given little weight.

Id. at 25.  The ALJ did not discuss Dr. Bhirud's range of motion

testing or her opinion that plaintiff should never perform

reaching with her right arm in any direction.  The ALJ instead

14

gave "significant weight" to the state agency consultant opinion of Dr. Boukhemis, which Dr. Lo thereafter affirmed.  Id.; id. at 1346-1349.  Dr. Boukhemis determined that plaintiff was only limited in her ability to reach overhead, in that she could only do it occasionally.  Id. at 1323.  In addition, Dr. Boukhemis stated that plaintiff could frequently balance, stoop, and kneel; could occasionally climb ramps and stairs and crouch; and could never balance or crawl.  Id.  According to the ALJ, "Although the evidence supports limiting the claimant somewhat further, these State agency opinions are given significant weight as they are supported by the evidence of largely benign objective findings and successful treatment."  Id.  Based on these findings, the ALJ then determined plaintiff's RFC.  Id. at 19.

      The Commissioner argues that the ALJ was not required to discuss plaintiff's right arm limitations beyond the inability to lift her arm above her shoulder because plaintiff "only alleged she was precluded from reaching above her shoulder" with her right arm.  Obj. at 2.  But, as plaintiff states in her response to the Commissioner's objections, during her testimony, she gave multiple statements regarding her shoulder impairment, not only relating to her ability to raise her right arm over her head, including that she "has constant

pain in [her] right shoulder and down [her] right shoulder
blade," that "it's a terrible pain and it hurts just basically
all the time," that she can't sleep, and that she "takes
medication to help the pain." Tr. at 48; Pl. Resp. to Def. Obj.
("Resp.") at 4. In addition, plaintiff stated that she "can't
hardly . . . lift anything. It's painful and [her] fingers . .
. go numb" if she does anything with her hands for very long.
Id. at 49. She also stated that she has pain when she reaches
her right arm to shoulder level and that she needs support from
her left hand to lift a five to ten pound of potatoes. Id.; id.
at 52.

  While plaintiff's testimony from the ALJ hearing
specifically points out her difficulties in reaching her arm
above her shoulder, her statements from the hearing, as well as
other evidence in the record indicate that plaintiff had other
difficulties with her ability to move her right arm due to her
shoulder impairment. As previously described, the results of
Dr. Bhirud's and Dr. Mukkamala's range of motion tests indicate
that plaintiff had limitations in range of motion of her right
arm beyond the inability to raise her arm above her head. Id.
at 778, 1468. Further, on multiple occasions, plaintiff
complained that she had restrictions in her ability to use her
right arm or that moving her right arm resulted in pain. For

example, on November 20, 2009, plaintiff stated she could "move [her right arm] anyway you want me to, but pain is there." Id. at 311.  She also stated that she experienced anterior shoulder pain when she attempts to pull up her pants.  Id.  On January 13, 2010, Dr. Cox stated that plaintiff had retained "quite a bit of range of motion" but she still experiences pain when she uses her right arm.  Id. at 555.  Inasmuch as the ALJ must consider all evidence in the record when determining the plaintiff's abilities despite her impairments, the ALJ was required to assess all evidence in the record, which clearly indicates that plaintiff alleged the inability to reach in other directions or that the reaching resulted in pain on multiple occasions.  See 20 C.F.R. § 404.1545(a)(1) (When making a residual functional capacity determination . . . the ALJ must consider all evidence before him.").  Therefore, this argument is without merit.

The Commissioner next asserts that the ALJ "sufficiently discussed the evidence to permit meaningful judicial review of [p]laintiff's right shoulder abilities and the weight the ALJ afforded to Dr. Bhirud's opinion.  Obj. at 3. The Commissioner cites to multiple points in the ALJ's decision where she discussed evidence that supports a finding that plaintiff had no limitations in her ability to move her right

17

arm except for overhead reaching.  See Obj. at 3-4; Tr. at 21-
22, 24-25.  However, the fact that the ALJ discussed evidence
that supported the findings included in her RFC does not relieve
her of her duty to discuss evidence in the record that conflicts
with these findings "and explain why the opinion [of the medical
source] was not adopted."  See SSR 96-8p at *7; see also Mascio,
780 F.3d at 636.

        With regard to the opinion evidence of Dr. Bhirud, the
ALJ first incorrectly stated that her findings were consistent
with the "modest abnormal findings" of Dr. Mukkamala, when in
fact, Dr. Bhirud found that plaintiff was limited in all arm
movement in her right extremity, and stated that plaintiff
should never perform reaching of any kind.  Id. at 23, 25, 1468,
1472.  Second, the ALJ stated that Dr. Bhirud "identified
several limitations unsupported by the record," but only
specifically pointing to the limitation of "never stooping."
Tr. at 23, 25, 1472.  The ALJ, however, did not discuss Dr.
Bhirud's range of motion examination, including the extensive
restrictions in plaintiff's ability to move her right arm in
multiple directions, nor why she rejected Dr. Bhirud's opinion
that plaintiff should never reach in any direction.  See Mascio,
780 F.3d at 636 (finding that the ALJ's decision did not
sufficiently explain conflicting evidence when he concluded that

18

Mascio could lift only 20 pounds without explaining his
rationale for rejecting a conflicting finding that Mascio could
lift 50 pounds).  The ALJ did not provide any specific rationale
or evidentiary basis for excluding reaching in any direction
from plaintiff's RFC.  Nor did the ALJ explain what evidence
provided by Dr. Bhirud supported the remaining evidence in the
record and what evidence contradicted the other opinions
regarding plaintiff's shoulder impairment.  This analysis by the
ALJ does not meet the requirements of SSR 96-8p to discuss
conflicting evidence in the record.  See SSR 96-8p at *7.  The
ALJ has "fail[ed] to assess [plaintiff's] capacity to perform
relevant functions, despite contradictory evidence in the
record" thereby "frustrat[ing] meaningful review." See Mascio,
780 F.3d at 636.

        In addition, because the ALJ has failed to adequately
analyze the evidence in the record in establishing plaintiff's
RFC, the court is unable to determine whether the hypothetical
questions posed to the vocational expert includes all of
plaintiff's functional capacities.  "'[I]n order for a
vocational expert's opinion to be relevant or helpful, it must
be based upon a consideration of all other evidence in the
record, and it must be in response to proper hypothetical
questions which fairly set out all of claimant's impairments.'"

Hines v. Barnhart, 453 F.3d 559, 566 (4th Cir. 2006) (quoting
Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989).  Indeed, SSR
96-8p cautions that "[w]ithout careful consideration of an
individual's functional capacities to support an RFC assessment
based on an exertional category, the adjudicator may [] overlook
limitations or restrictions that would narrow the ranges and
types of work an individual may be able to do."  SSR 96-8p at
*4.  Here, at the hearing, the ALJ posed hypotheticals to the
vocational expert based upon plaintiff's inability to reach
overhead with her right dominant arm, but did not limit reaching
in any other direction.  See Tr. at 58.  The vocational expert
testified that plaintiff could perform jobs including a bagger,
marker, and electrode cleaner.  Id. at 59.  However, when
plaintiff's counsel asked the vocational expert to list jobs
with the added limitation of no reaching in any direction with
the right dominant hand, the vocational expert could not list
any that also met the requirements of plaintiff's other
functional capacities.  Id. at 60-61.  Because the ALJ has
failed to adequately assess conflicting evidence in the record
regarding plaintiff's impairments, the court is unable to
determine whether the hypotheticals posed to the vocational
expert considered all of plaintiff's impairments. Consequently,
remand is appropriate.

### IV.  Conclusion

Accordingly, having received the PF&R and the defendant's objections, and having reviewed the record _de novo_, it is ORDERED:

1.  That the PF&R be, and it hereby is, adopted and incorporated herein;

2.  That the Commissioner's objections to the PF&R Be, and they hereby are, denied;

3.  That the decision of the Commissioner be, and it hereby is, reversed;

4.  That this action be, and it hereby is, remanded for further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g), which proceedings shall include consideration of evidence that conflicts with the RFC of the ALJ, particularly the findings and opinion of Dr. Bhirud, as discussed in the foregoing opinion, as well as the impact of such further consideration on the conclusion of the vocational expert; and

4.  That this action be, and it hereby is, dismissed and stricken from the docket of the court.

The Clerk is requested to transmit copies of this memorandum opinion and order to all counsel of record and any unrepresented parties.

DATED: March 13, 2017

John T. Copenhaver, Jr.
United States District Judge